UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MERCEDES MARKER,<br><br>           Plaintiff,<br>     v.<br><br>CITY OF SAN JOSE and SON VU,<br><br>           Defendants. | Case No.: 09-CV-05956-RMW<br><br>ORDER DENYING MOTION FOR<br>PARTIAL SUMMARY JUDGMENT |

Plaintiff Mercedes Marker moves for partial summary judgment on claims for civil rights violations, false imprisonment and battery arising out of an interaction with officers from the San Jose City Police Department. For the following reasons, the court denies the motion.

**I. BACKGROUND**

On the evening of November 13, 2008, Mercedes Marker ("plaintiff") accompanied non-party William Hampsmire to the public sidewalk near South 2nd Street and Paseo de San Antonio in San Jose, California. Dkt. No. 37 (Marker Decl. ¶ 2). According to plaintiff, she used a video camera to film Mr. Hampsmire while he "preached the gospel of Jesus Christ" to a group of onlookers. Defendant Officer Son Vu ("defendant") and his colleague, non-party Officer Jose Hisquierdo, were called to the scene because of complaints related to Mr. Hampsmire's conduct. Dkt. No. 40 (Vu Decl. ¶ 3). Defendants claim Mr. Hampsmire was loudly spewing racial epithets and "effectively inciting a riot." (Vu Decl. ¶ 4-5). As a result, Officer Hisquierdo began the

1

Case No.: 09-CV-05956-RMW
ORDER DENYING PARTIAL SUMMARY JUDGMENT
LMP

process of collecting Mr. Hampsire's identifying information for the purpose of arresting him. (Vu Decl. ¶ 7). Plaintiff continued to film Mr. Hampsmire as he interacted with the officers. Plaintiff also asked the officers "What did he do wrong?" After not receiving a reply, plaintiff repeated the question. (Marker Decl. ¶ 15).

The parties dispute what happened next. According to defendant, "as Officer Hisquierdo was conducting the arrest of Mr. Hampsmire, plaintiff … imposed herself to within an arm's length of Officer Hisquierdo and began distracting him with questions and video recording." (Vu Decl. ¶ 7). Defendant claims that he felt concern for officer safety "due to plaintiff's physical proximity to Officer Hisquierdo, her intrusion into the arrest process, and her efforts to distract Officer Hisquierdo."[1] *Id.* Defendant states that he expressly asked plaintiff to back up. When plaintiff "did not appear to immediately respond," defendant said "Let him do his job" and proceeded to push plaintiff's camera away with his right hand, while using his left hand to guide plaintiff's shoulder and move her a few feet away from the scene of arrest. *Id.* Defendant denies ever hearing plaintiff complain of pain during or after the physical contact. (Vu Decl. ¶ 8).

Plaintiff describes the events differently. She acknowledges that she was near the officers at the time of Mr. Hampsmire's arrest, but claims that she "moved back" when the interaction began. (Marker Decl. ¶ 16). In her declaration, plaintiff says, "[defendant] took his hand and put it over my right hand which was holding the camcorder. The camcorder strap was around my wrist. [Defendant] then started twisting my hand and pushing me, causing me to walk." (Marker Decl. ¶ 17). Plaintiff claims that she did not hear defendant say "Let him do his job" until just after he made contact with her. (Marker Decl. ¶ 18). She then asserts that defendant caused her hand and

---

[1] Plaintiff argues that the statement in defendant's declaration indicating that he was concerned for officer safety is contradicted by his deposition testimony, and that the declaration should therefore be disregarded. A party cannot create an issue of fact by submitting a "sham affidavit" contradicting prior testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). However, the court finds that defendant's deposition and declaration are sufficiently consistent on this point to preclude application of the "sham affidavit" rule. *See id.* at 998-99 ("[T]he inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."); Dkt. No. 42 (Vu Depo. at 85-86) ("Q. At this point in the encounter when you were there, were there any persons present who gave you cause for concern about officer safety? A. Yes. At that – at this point, yes. Q: Who present was giving you a concern about officer safety? A: The—Ms. Marker with the video camera.").

2

Case No.: 09-CV-05956-RMW
ORDER DENYING PARTIAL SUMMARY JUDGMENT
LMP

the camera to swing in a 180 degree circle. (Marker Decl. ¶ 19). Plaintiff also alleges that while the camera twisted she said, "Oh-no!", "You're hurting me" and "Ow-you're hurting my arm!" (Marker Decl. ¶ 21). Plaintiff estimates that defendant moved her approximately five feet away from the scene of the arrest. (Marker Decl. ¶ 24).

Following the incident, plaintiff complained to a friend of pain in her hand and wrist area. She went to Santa Clara Valley Medical Center the next day. (Marker Decl. ¶ 26). She claims that she continues to have difficulty with many of her daily activities, but has not provided any evidence of treatment of her alleged injury.

## II. ANALYSIS

### 1. First Amendment Claim

Plaintiff asserts that defendant violated her First Amendment rights when he twisted her camera while she was filming Mr. Hampsmire's arrest. In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994). The First Amendment forbids government officials from retaliating against individuals for "speaking out." *See Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). To recover for such retaliation, a plaintiff must prove: (1) she engaged in constitutionally protected activity; (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *See Pinard v. Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006).

It has been recognized that the videotaping of public officials is an exercise of First Amendment liberties. *See Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011) (finding that filming or videotaping of government officials engaged in their duties in a public place, including police officers performing an arrest, is protected by the First Amendment); *cf. Gentile v. State Bar of*

*Nev.*, 501 U.S. 1030, 1035-36 (1991) (recognizing a core First Amendment interest in "the dissemination of information relating to alleged governmental misconduct"). However, there are issues of material fact as to whether plaintiff's speech was chilled and if there was a substantial causal relationship between the filming of the arrest and defendant's action. Plaintiff was able to continue filming the police for thirteen minutes after her interaction with defendant, suggesting that her rights were not "chilled" by his conduct. Further, while plaintiff claims it can be "inferred" that her speech was a "substantial or motivating factor" in defendant's decision to move her from the scene, defendant maintains that his action was motivated by plaintiff's interference with a valid arrest. Plaintiff cites no case finding a First Amendment right to interfere with a police arrest. *Compare Glik*, 655 F.3d at 84 ("Glik filmed [the officers] from a comfortable remove…neither spoke to nor molested them in any way."). "Since credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment…. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As a reasonable juror could find that defendant did not intentionally infringe plaintiff's right to free speech, or that her rights were not chilled at all, the court denies plaintiff's motion as to her First Amendment claim.

**2. False Imprisonment Claim**

Plaintiff next claims that defendant falsely imprisoned her. Under California law, the elements of a claim for false imprisonment are: "(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." *Young v. County of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011).

First, there is an issue of fact as to whether plaintiff was "confined." In order to constitute false imprisonment, there must be *direct restraint* of the person for some appreciable length of time, however short, compelling the person to stay or go somewhere against his or her will. *See Vandiveer v. Charters*, 110 Cal. App. 347 (Cal. Ct. App. 1930); *see also* 5 Witkin, Summary 10th (2005) Torts, § 427. Here, plaintiff asserts that she was confined when defendant "twist[ed her]

4

Case No.: 09-CV-05956-RMW
ORDER DENYING PARTIAL SUMMARY JUDGMENT
LMP

hand", "push[ed her]", and "caus[ed her] to walk." (Marker Decl. ¶ 17). Such conduct, if proved, could constitute confinement under California law. *See Hanna v. Raphael Weill & Co.*, 90 Cal. App. 2d 461 (Cal. Ct. App. 1949) (plaintiff had a case for false imprisonment when she was grabbed by her arm and escorted back to the store). However, a jury could also accept defendant's version of the facts, in which he merely used "his right hand to make contact with plaintiff's elbow or shoulder to guide her a few feet away…" Dkt. No. 39 at 3. Whether such a limited "restraint" meets the definition of confinement is an issue of fact. *See Hanna*, 90 Cal. App. 2d at 463 (holding that "appellant proved a prima facie case of false imprisonment which *should have gone to the jury*") (emphasis added).

In addition, there is a factual issue as to whether the defendant's action was privileged. While an officer cannot claim privilege as a defense to a claim of false imprisonment if he *abuses* his authority, *see Ware v. Dunn*, 80 Cal. App. 2d 936, 944 (Cal. Ct. App. 1947), "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Further, California law expressly allows police officers to take measures to keep people from interfering with the performance of their job. *See* Cal. Pen. Code § 148 (making it a crime to willfully delay or obstruct an officer in the discharge of his or her official duties). As a jury could find that defendant rationally understood plaintiff to be interfering with a lawful arrest and that he was acting within the scope of his authority, plaintiff is not entitled to summary judgment as to the claim for false imprisonment.

### 3. Fourth Amendment Claim

Plaintiff next claims that defendant used unnecessary force in "seizing" her, violating her Fourth Amendment rights. A claim against law enforcement officers for excessive force is analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Graham*, 490 U.S. at 388. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at

5

stake." *Id.* at 396. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (*citing Terry v. Ohio,* 392 U.S. 1, 20–22 (1968)).

In this case, genuine issues of material fact exist regarding whether the defendant's use of force was objectively reasonable. The reasonableness of an officer's conduct is generally "a question of fact best resolved by a jury," *Wilkins v. City of Oakland,* 350 F.3d 949, 955 (9th Cir. 2003); only in the absence of material disputes is it "a pure question of law." *Scott v. Harris,* 550 U.S. 372, 381 (2007). The parties here disagree about the amount of force defendant applied when he approached plaintiff. Taking defendant's statements as true, a reasonable jury could find that defendant's contact with plaintiff was reasonable in light of his belief that she was interfering with a lawful arrest. The court thus denies plaintiff's motion for summary judgment on her Fourth Amendment claim.

### 4. Battery Claim

Plaintiff last includes a claim for battery under California law. It is clear that a battery claim against a police officer requires that unreasonable force be established. *Edson v. City of Anaheim,* 63 Cal. App. 4th 1269, 1272 (Cal. Ct. App. 1998); *Finley v. City of Oakland*, 2006 WL 269950, *14 (N.D. Cal. 2006). The court's findings with respect to the Fourth Amendment claim largely mandate that plaintiff's request for summary adjudication as to the battery claim fails as well. *See Nelson v. City of Davis*, 709 F. Supp. 2d 978, 992 (E.D. Cal. 2010) ("Because the same standards apply to both state law…battery and Section 1983 claims premised on constitutionally prohibited excessive force, the fact that…claims under the Fourth Amendment survive summary judgment also mandates that the…battery claims similarly survive."). Although plaintiff claims that it is defendant's burden to prove that his use of force was reasonable, the record here clearly contains enough evidence to raise a factual issue concerning how much force was used. Thus, regardless of who bears the burden of proof, summary judgment is not appropriate.

### III. ORDER

For the foregoing reasons, the court denies plaintiff's motion for partial summary judgment.

6

Case No.: 09-CV-05956-RMW
ORDER DENYING PARTIAL SUMMARY JUDGMENT
LMP

DATED: July 31, 2012

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge